[Cite as *In re M.B.*, 2024-Ohio-6028.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

IN RE M.B., ET AL.       :

Minor Children       :

[Appeal by Mother and Father]       :

Nos. 113930 and 113992

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 26, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-24-901148 and AD-24-901149

---

### *Appearances:*

Gregory T. Stralka, *for appellant* Mother.

Dawn Snyder, Attorney at Law, LLC, and Dawn Snyder, *for appellant* Father.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee*.

EMANUELLA D. GROVES, J.:

**{¶ 1}** In this consolidated appeal, appellant-mother ("Mother") and appellant-father ("Father")[1] appeal the juvenile court's decisions adjudicating their twins, M.B. (d.o.b. 11/07/23) and A.B. (d.o.b. 11/07/23) (collectively "the Children"), neglected and dependent and awarding permanent custody to Cuyahoga County Division of Children and Family Services ("CCDCFS"). Upon review, we affirm the juvenile court's decisions.

## I. Facts and Procedural History

**{¶ 2}** The Children were first placed in CCDCFS custody on November 13, 2023, after an initial complaint for dependency and permanent custody and motion for predispositional temporary custody were filed. The Children remained in CCDCFS custody without interruption. CCDCFS's original case was dismissed without prejudice for failure to resolve the matter in the statutory timeframe.

**{¶ 3}** CCDCFS refiled complaints for neglect, dependency, and permanent custody of the Children in February 2024 along with a motion for predispositional temporary custody. Mother and Father denied the allegations of the complaint and stipulated to the motion for predispositional temporary custody. Mother and Father advised that the West Side Catholic Center in Cleveland should be used for their mailing address for future court notices. Emergency temporary care custody was

---

[1] We note that the refiled complaint, amended refiled complaint, and lower court record refer to appellant-father as the "alleged father" due to his failure to establish paternity. However, appellant-father refers to himself as "father" in his brief. For ease of discussion, we refer to him as "Father" in the instant appeal.

granted to CCDCFS, and the Children were to remain in its care pending further hearing.

{¶ 4} On April 22, 2024, a hearing was held on CCDCFS's refiled complaint and the following evidence was presented. CCDCFS admitted ten certified journal entries, including decisions from prior cases ultimately committing three of the Children's siblings to CCDCFS's permanent custody. These entries referenced Father's alleged assault of one of the Children's siblings, for which he faced criminal charges. These entries also referenced Mother's ongoing and unresolved mental-health issues. They further documented Mother's and Father's history of inconsistent visitation with the Children's siblings. Testimony was also offered by Suneaqua Halley ("Halley"), the extended services case worker of record.

{¶ 5} Halley testified that the Children were born at a Cuyahoga County hospital and were confined there after the hospital was alerted that CCDCFS had the Children's siblings in its custody. The Children were never in the care and custody of Mother and Father; temporary custody was granted to CCDCFS following their birth, and the Children were in foster care.

{¶ 6} Halley further testified that there were ongoing concerns regarding Mother's issues with mental health, domestic violence, and parenting; Mother and Father's unstable housing and inconsistent efforts to visit the Children; and Father's issues with anger management, domestic violence, parenting, substance abuse, and mental health. Despite efforts to establish Father's paternity, he had not done so and claimed he did not need to. Multiple referrals were made to assist Mother and

Father with these ongoing issues, including referrals to a service that could recommend providers based on out-of-county addresses. Father claimed that he recently engaged in certain services and screenings; however, there were no documents or results to verify his claims. Mother expressed a willingness to engage in services; however, she never disclosed her providers or executed any releases allowing CCDCFS to receive information from those providers about her progress. Since her involvement in the case, Halley described her communications with Father as "evasive." (Tr. 64.) However, he became more engaged and consistent following his separation from Mother a few weeks prior. Father also signed releases for service providers on the day of the hearing. While Mother contacted Halley about visits, she would not respond to inquiries regarding services.

{¶ 7} Halley explained that at the time of the Children's birth and removal, Mother and Father were homeless in the Cleveland area and failed to secure stable housing throughout the pendency of the case. In February 2024, Mother and Father indicated that they were living with Father's family in Lorain County during CCDCFS's investigation of this matter. Halley testified that since November 2023, when the Children were born, Mother and Father visited them on two occasions. Halley observed those visits and described Mother as "more hands-on" while Father "had some difficulty." *Id.* at 69.

{¶ 8} The Children were in foster care. CCDCFS had not been provided with nor identified relatives that could be approved for placement. CCDCFS asserted that the placement was appropriate for the Children. The Children's guardian ad litem

("GAL") advised that the Children were "being very well care for" and "bonding well with their foster parents." *Id.* at 127.

{¶ 9} The GAL acknowledged that Mother and Father were "in a way kind of in a bind" due to work and transportation issues but concluded that "they didn't put forth the effort early to demonstrate that they were working this case plan." *Id.* at 128. The GAL further explained that Mother and Father's housing situation "was mysterious," stating that "[t]hey didn't want [CCDCFS] to know where they were living because they didn't want [CCDCFS] to be involved." *Id.* The GAL concluded that permanent custody was in the Children's best interests.

{¶ 10} Mother and Father did not offer any witnesses or exhibits. Both requested that temporary custody be extended. Mother and Father argued that CCDCFS did not make reasonable efforts to provide proper referrals and the juvenile court did not have jurisdiction to hear the case.

{¶ 11} On May 2, 2024, the juvenile court issued decisions[2] with the following factual findings based on the testimony and evidence presented at the hearing:

- The refiled complaint was amended to indicate the following:

  o Mother has a history of mental health issues, which affect her ability to appropriately parent Children, and has not addressed them.

  o CCDCFS was unable to verify whether Mother and Father have stable and appropriate housing.

---

[2] Two judgment entries were issued, one in each of the Children's cases. The decisions are identical.

- o Father has a history of violent tendencies and anger management issues which he has failed to address.

- Mother and Father have mental health concern and lack safe and appropriate housing for Children.

- Father failed to address anger-management concerns.

- Children's continued residence in or return to the home of Mother and/or Father would be contrary to the Children's best interests.

- Reasonable efforts were made to prevent the removal of Children, facilitate the return of Children, and finalize the permanency plans of reunification.

- Mental health, parenting, domestic violence, and housing services were provided to Mother and mental health, substance abuse, domestic violence, anger management, parenting, and housing services were provided to Father.

- Children have little to no bond with Mother and Father as they have only visited the Children twice since birth.

- Children were too young to express their wishes and the Children's GAL recommended that permanent custody was in their best interests.

- Children have been in CCDCFS custody since birth.

- Children deserve a safe and stable home environment where their needs can be met and they can thrive. That could not be achieved with Mother and Father because they have not engaged in or completed case plan services and failed to remedy the cause for removal.

- No relatives were identified as willing or appropriate to care for the Children.

- R.C. 2151.414(E)(11) applied to Mother and Father.

- Pursuant to R.C. 2151.414(E)(1), (4), (11), (14), and (16), Children could not be placed with one of their parents within a reasonable period of time or should not be placed with either parent. Factors include:

- o Mother and Father continuously and repeatedly failed to substantially remedy the conditions causing Children to be placed outside their home despite reasonable case planning and diligent efforts by CCDCFS to assist them.

- o Mother and Father demonstrated a lack of commitment toward the Children by failing to regularly support, visit, or communicate with them, or by other actions showing an unwillingness to provide an adequate permanent home.

- o Mother and Father had parental rights involuntarily terminated with respect to a sibling of Children and failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, they could provide a legally secure permanent placement and adequate care for the health, welfare, and safety of Children. Mother has three other children placed in permanent custody while Father has two.

- o Mother and Father are unwilling to provide food, clothing, shelter, and other basic necessities for Children or to prevent Children from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

- o Children's sibling, who is in the permanent custody of CCDCFS, was adjudicated abused and Mother was in agreement with the adjudication. Father was the alleged perpetrator of the abuse of Children's sibling.

(Journal Entries – Permanent Custody, 05/02/24.) The juvenile court adjudicated the children neglected and dependent and found by clear and convincing evidence that permanent custody was in the Children's best interests. The Children were committed to the permanent custody of CCDCFS; the parental rights and responsibilities of Mother, Father, and John Doe were terminated; and permanency plans of adoption were approved.

{¶ 12} Mother and Father separately appealed the juvenile court's May 2, 2024 decisions, raising the following assignments of error for review.

**Mother's Assignment of Error No. 1**

Cuyahoga County lacked proper venue for the trial court to order [the C]hildren into permanent custody since [the C]hildren did not have a residence or legal settlement in Cuyahoga County.

**Mother's Assignment of Error No. 2**

[CCDCFS] failed to establish that permanent custody should be granted under the provisions of [R.C.] 2151.414(E).

**Mother's Assignment of Error No. 3**

The trial court's decision granting permanent custody of [the C]hildren was contrary to the best interests of [the C]hildren.

**Father's Assignment of Error**

The trial court erred and abused its discretion in finding by clear and convincing evidence that it would be in the best interest of [the Children] to permanently terminate the parental rights of Father and place them in the permanent custody of CCDCFS.

## II. Law and Analysis

### A. Venue

{¶ 13} In her first assignment of error, Mother argues that venue was improper because the Children did not have a residence or legal settlement in Cuyahoga County. Father also claims that geographic burden was placed on him because neither Cuyahoga County nor Lorain County would refer him to service providers to address case plan concerns because of jurisdictional limitations.

{¶ 14} "Venue is a 'procedural matter,' and it refers not to the power to hear a case but to the geographic location where a given case should be heard." *In re Z.R.*, 2015-Ohio-3306, ¶ 16, citing *Morrison v. Steiner*, 32 Ohio St.2d 86, 87-88 (1972).

Pursuant to R.C. 2151.27(A)(1), "any person having knowledge of a child who appears . . . to be an . . . abused, neglected, or dependent child may file a sworn complaint with respect to that child in the juvenile court of the county in which the child has a residence or legal settlement or in which the . . . abuse, neglect, or dependency allegedly occurred." *See also* Juv.R. 10(A). The Ohio Supreme Court held that these venue provisions are directory rather than mandatory and the failure to satisfy them in a dependency complaint does not remove a juvenile court's jurisdiction over the case. *In re Z.R.* at ¶ 26 (noting the "general practice of ensuring wide discretion for juvenile courts").

{¶ 15} Juv.R. 11(A) provides that "[i]f the child resides in a county of this state and the proceeding is commenced in a court of another county, that court, on its own motion or a motion of a party, *may* transfer the proceeding to the county of the child's residence upon the filing of the complaint or after the adjudicatory or dispositional hearing for such further proceeding as required." (Emphasis added.) Transfer to another county is only required when "other proceedings involving the child are pending in the juvenile court of the county of the child's residence." Juv.R. 11(B). Thus, the decision to transfer venue is generally within the juvenile court's broad discretion. *In re Z.R.* at ¶ 25. A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 16} Our review of the record reveals the uncertain and ever-changing nature of Mother and Father's residence. Evidence was offered that Mother and

Father were homeless in Cuyahoga County when the Children were born at a Cuyahoga County hospital. Testimony was offered that Mother and Father reported that they were living in a Cuyahoga County home, but when Halley called to confirm the new housing, they were no longer living there. In February 2024, Mother and Father reported that they were living with Father's family in Lorain County. However, Mother and Father never provided their address to CCDCFS. In February 2024, Mother and Father requested that court notices be sent to a mailing address in Cuyahoga County. As of the April hearing, Father was living in a men's shelter in Cleveland. CCDCFS was unable to determine where Mother resided because she was resistant to providing her current address. No evidence was offered that Mother was still residing in Lorain County. Based on this record, we cannot say that the juvenile court abused its discretion in declining to transfer venue to Lorain County. Accordingly, Mother's first assignment of error is overruled.

### B. Standard of Review

{¶ 17} Next, we turn to Mother's and Father's arguments challenging the juvenile court's findings and award of permanent custody to CCDCFS. We begin by outlining the applicable standard of review.

{¶ 18} The Ohio Supreme Court recently clarified that sufficiency of the evidence and/or manifest weight of the evidence are the proper appellate standards of review to apply in cases involving a juvenile court's decision to award permanent custody of a child and terminate parental rights, depending on the nature of the arguments presented by the parties. *In re Z.C.*, 2023-Ohio-4703, ¶ 18 (holding

remand was required where an appellate court applied the abuse-of-discretion standard). Sufficiency of the evidence and manifest weight of the evidence are two distinct and different concepts: "'sufficiency is a test of adequacy'" while manifest weight depends on the evidence's ""'effect in inducing belief'."" (Emphasis omitted.) *Id.* at ¶ 13, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386-387 (1997), quoting *Black's Law Dictionary* (6th Ed. 1990). "When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Id.* at ¶ 14, quoting *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. Reversal based on the manifest weight of the evidence is not to be taken lightly. *Id.* at ¶ 16, quoting *id.* at ¶ 31. Finally, we note that "[a]lthough sufficiency and manifest weight are distinct legal concepts, a finding that a judgment is supported by the manifest weight of the evidence necessarily includes a finding that sufficient evidence supports the judgment." *In re M.T.*, 2024-Ohio-3111, ¶ 40 (8th Dist.), citing *In re L.H.*, 2024-Ohio-2271, ¶ 29 (8th Dist.).

{¶ 19} With these concepts in mind, we address Mother's and Father's specific arguments.

### C. Permanent-Custody Determination

{¶ 20} In her second and third assignments of error, Mother argues that CCDCFS failed to establish that permanent-custody should be granted under

R.C. 2151.414(E) and the juvenile court's permanent custody determination was contrary to the Children's best interests. In his sole assignment of error, Father argues that the juvenile court erred and abused its discretion in finding that it was in the Children's best interests to terminate his parental rights and place them in the permanent custody of CCDCFS. Since these challenges require the same analysis, we address them together.

{¶ 21} Both the U.S. and Ohio Supreme Courts recognize that parents have a basic and fundamental interest in the care, custody, and management of their children. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *In re Murray*, 52 Ohio St.3d 155, 157 (1990); *In re C.F.*, 2007-Ohio-1104, ¶ 28. Parental "rights, however, are not absolute, and a parent's natural rights are always subject to the ultimate welfare of the child." *In re K.M.*, 2015-Ohio-4682, ¶ 15 (10th Dist.), citing *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). Therefore, the "[t]ermination of parental rights is an alternative of last resort but is sanctioned when necessary for the welfare of a child." *In re M.S.*, 2015-Ohio-1028, ¶ 7 (8th Dist.), citing *In re Wise*, 96 Ohio App.3d 619, 624 (9th Dist. 1994). By terminating parental rights, the goal is to create a more stable life for dependent children and to 'facilitate adoption to foster permanency for children.'" *In re L.W.*, 2017-Ohio-657, ¶ 21 (8th Dist.), quoting *In re N.B.*, 2015-Ohio-314, ¶ 67 (8th Dist.).

{¶ 22} When a complaint for abuse, neglect, or dependency contains a prayer request for permanent custody, R.C. 25131.353 applies.[3] R.C. 2151.353(A)(4) provides that a court may commit a child that is adjudicated abused, neglected, or dependent to the permanent custody of a public children services agency if the court determines that 1) the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent under R.C. 2151.414(E) and 2) permanent commitment is in the best interest of the child under R.C. 2151.414(D)(1).

{¶ 23} The juvenile court's findings and permanent-custody determination must be supported by clear and convincing evidence. "'Clear and convincing evidence is that measure or degree of proof, which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be

---

[3] We note that Father cites to R.C. 2151.414(B) to establish certain requirements for terminating his parental rights. R.C. 2151.414(B) applies when a motion requesting permanent custody is filed. Here, CCDCFS requested permanent custody as part of its neglect and dependency complaint. This court has previously explained that when proceeding on a complaint with an original dispositional request for permanent custody, the trial court must satisfy two statutory requirements before ordering a child to be placed in the permanent custody of a children's services agency: R.C. 2151.414(E) and 2151.414(D)(1). *In re A.R.*, 2020-Ohio-5005, ¶ 31 (8th Dist.). Thus, under R.C. 2151.353(A)(4), the juvenile court "does not have to consider the factors in R.C. 2151.414(B), but it must still consider the factors in R.C. 2151.414(E) and determine whether awarding permanent custody to the agency is in the child's best interest under R.C. 2151.414(D)(1)." *In re Bn.J.*, 2024-Ohio-2282, ¶ 39 (6th Dist.), citing *In re L.K.*, 2022-Ohio-1857, ¶ 104 (6th Dist.).

established.'" *In re Z.C.*, 2023-Ohio-4703, at ¶ 7, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. In instances where clear and convincing proof is required, "'a reviewing court will examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof.'" *Id.* at ¶ 8, quoting *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990), citing *Ford v. Osborne*, 45 Ohio St. 1 (1887), paragraph two of the syllabus.

## 1. R.C. 2151.414(E) Factors

{¶ 24} After considering all relevant evidence, the court must enter a finding that a child cannot be placed with either parent within a reasonable time or should not be placed with either parent if the court determines, by clear and convincing evidence, that one or more of 16 enumerated factors exist as to each of the child's parents. R.C. 2151.414(E). Here, the juvenile court found that the Children could not or should not be placed with either Mother or Father based on five factors:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
>
> . . .
>
> (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the

child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]

. . .

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

. . .

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

. . .

(16) Any other factor the court considers relevant.

R.C. 2151.414(E). Along with its findings for R.C. 2151.414(E)(11) and (16), the juvenile court noted that Mother has three other children placed in permanent custody and Father has two. The juvenile court further noted that one of the Children's siblings, who was in CCDCFS's permanent custody, was adjudicated abused; that Mother was in agreement with that adjudication; and that Father was the alleged perpetrator of the Children's sibling's abuse.

{¶ 25} Mother argues that the juvenile court's decision merely repeats the language of R.C. 2151.414(E)(1) and (4) and does not provide reasoning or factual

bases to support its findings.[4] Mother further argues that no evidence was presented that CCDCFS made "diligent efforts" to assist her in completing case-plan services as required by R.C. 2151.414(E)(1). Mother also asserts that the juvenile court's finding under R.C. 2151.414(E)(4) was contrary to the evidence presented regarding visitation. Lastly, Mother admits that the exhibits admitted into evidence established that her parental rights were involuntarily terminated with respect to the Children's siblings. However, Mother argues that she engaged in parenting and mental-health services, obtained approval for public housing, and demonstrated that she was able to complete the components of the case plan. Mother does not challenge the juvenile court's findings under R.C. 2151.414(E)(14) and (16).

{¶ 26} Father also challenges the juvenile court's R.C. 2151.414(E)(1) finding, arguing that he began to address case-plan items. Father claims that the juvenile court's determination that he continuously and repeatedly failed to remedy the problems that caused Children's removal is erroneous because he separated from Mother, changed his living situation, was working to secure housing, engaged in behavioral and mental-health services, and scheduled a paternity test. Father does not challenge the juvenile court's four other R.C. 2151.414(E) findings.

---

[4] Mother cites *In re A.T.*, 2021-Ohio-4306, ¶ 38 (8th Dist.), in support of her argument, claiming that "a reversal is warranted where 'the juvenile court did not specify what problem or condition that Mother failed to remedy.'" However, that is not what this court held. Rather, we noted that the juvenile court's R.C. 2151.414(E)(1) and (4) findings did not specify which parent they pertained to nor the unresolved problem or condition. *Id*. We then found that the record did not contain clear and convincing evidence that one or more of the factors set forth in R.C. 2151.414(E) existed or that permanent custody was in the child's best interest. *Id*. at ¶ 39. Thus, we concluded that reversal was warranted based on a lack of clear and convincing evidence in the record before us.

{¶ 27} A juvenile court is only required to find that one of the R.C. 2151.414(E) factors is met to properly find that a child cannot or should not be placed with a parent. *In re Y.F.*, 2024-Ohio-5605 (8th Dist.), citing *In re Ca.T.*, 2020-Ohio-579, ¶ 27 (8th Dist.), citing *In re V.C.*, 2015-Ohio-4991, ¶ 42 (8th Dist.). Moreover, "'substantial compliance with a case plan' is not, in and of itself, 'dispositive' and 'does not preclude a grant of permanent custody to a social services agency.'" *In re P.B.*, 2020-Ohio-4471, ¶ 92 (8th Dist.), quoting *In re J.B.*, 2013-Ohio-1704, ¶ 90 (8th Dist.). Indeed, "'[t]he issue is not whether the parent has substantially complied with the case plan, but whether the parent has substantially remedied the conditions that caused the child's removal.'" *In re J.B.* at ¶ 90, quoting *In re McKenzie*, 1995 Ohio App. LEXIS 4618, 11 (9th Dist. Oct. 18, 1995).

{¶ 28} Our review of the record reveals that Mother and Father had a history with CCDCFS, which included the prior commitment of three of Children's siblings to CCDCFS's permanent custody. Testimony was offered that ongoing concerns remained, including Mother's mental health, domestic violence, and parenting; Mother and Father's unstable housing and inconsistent efforts to visit the Children; and Father's anger management, domestic violence, parenting, substance abuse, and mental health. Multiple referrals were made to assist Mother and Father with these ongoing issues, including referrals to a service that could recommend providers based on an out-of-county address. While Mother and Father claimed that they engaged in certain services and screenings, CCDCFS was unable to verify their claims. Nor was any evidence provided by Mother and Father to establish their

engagement in those services. As described above, Mother and Father had not established stable housing and Mother and Father visited the Children on only two occasions since their birth. The record further reveals that Mother's and Father's communications with CCDCFS were inconsistent and they were resistant to its involvement. Based on the foregoing, we find that the weight of the evidence supports each of the juvenile court's R.C. 2151.414(E) findings, even though only one is necessary to find that the Children cannot or should not be placed with Mother and Father.

## 2. Best Interest Under R.C. 2151.414(D)(1)

{¶ 29} In determining the best interest of a child, the juvenile court must consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . .;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)

{¶ 30} Although a trial court is required to consider each relevant factor under R.C. 2151.414(D)(1) in deciding to award permanent custody, "[t]here is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 2006-Ohio-5513, ¶ 56. The Ohio Supreme Court has held that "R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best interest factors in R.C. 2151.414(D)(1)(a) through (e). Consideration is all the statute requires." *In re A.M.*, 2020-Ohio-5102, ¶ 31.

{¶ 31} Here, the juvenile court considered the evidence and testimony presented at the hearing, as well as the GAL's report, and discussed each of the R.C. 2151.414(D)(1) factors in its decision. The juvenile court ultimately found that the Children had been in CCDCFS since birth and had little to no bond with Mother and Father because they only visited the Children twice. The juvenile court also found that the Children were too young to express their wishes, and the GAL recommended permanent custody. The juvenile court found that Mother and Father could not achieve a safe and stable home environment, meeting the Children's needs and allowing them to thrive, because Mother and Father did not engage in or complete case-plan services and failed to remedy the cause for the Children's removal. The juvenile court further found that no relatives were identified as willing or appropriate to care for the Children. Finally, the juvenile court found that R.C. 2151.414(E)(11) applied to both Mother and Father.

{¶ 32} Mother argues that the R.C. 2151.414(D)(1)(a) factor weighs against permanent custody because there was testimony that she had appropriate visits with the Children and that she was active in attending to their needs. Mother claims that because of the Children's young age, it cannot accurately be stated whether they bonded with her or anyone else. Mother further claims that R.C. 2151.414(D)(1)(b) and (c) are inapplicable because the Children were "unable to articulate a position" and have not been in CCDCFS custody for 22 months. Mother asserts that the R.C. 2151.414(D)(1)(d) factor weighs against permanent custody because she completed or was engaged in mental health services, addressed parenting requirements, and had been approved for public housing. Finally, Mother claims that R.C. 2151.414(D)(1)(e) is inapplicable because none of the (E)(7) to (11) factors were established.

{¶ 33} Father admits that he visited the Children infrequently, that he needed help with parenting tasks, and that his parental rights were previously terminated with respect to the Children's siblings. However, Father argues that he has recently exhibited improvements and made efforts to address the Children's case plan. Father claims that "a grant of permanent custody to [CCDCFS] is not in the best interest of [the Children] as he will be in a much better position to care for them at the conclusion of temporary custody."

{¶ 34} After weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we cannot say that the juvenile court clearly lost its way in its resolution of evidentiary conflicts and created a manifest

miscarriage of justice in finding that permanent custody was in the Children's best interests. The record reveals that Mother and Father visited the Children on only two occasions, despite having a weekly visitation schedule. The record further demonstrates that the Children were bonded with and "very well care[d] for" by their foster family. After acknowledging Mother's and Father's struggles, the Children's GAL concluded that they had not "put forth the effort early to demonstrate that they were working this case plan" and permanent custody was in the Children's best interests. Although short of the time period described in R.C. 2151.414(D)(1)(c), the record reveals that the Children have been in CCDCFS's temporary custody since November 2023 and Mother and Father have been resistant and inconsistent in their engagement with CCDCFS. Despite Mother's and Father's claims that they had begun to participate in services, no evidence was presented to verify those claims or establish that conditions causing the Children's removal had been remedied. Finally, the record reveals that Mother and Father's parental rights were previously terminated with respect to the Children's siblings. Thus, there is clear and convincing evidence in the record to support a permanency finding based on the best-interest factors set forth in R.C. 2151.414(D)(1)(a)-(e).

{¶ 35} Accordingly, we hold that the juvenile court's award of permanent custody is supported by sufficient evidence within the record and is not contrary to that evidence's manifest weight. Mother's second and third assignments of error and Father's single assignment of error are overruled.

{¶ 36} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

MICHELLE J. SHEEHAN, P.J., and
EILEEN T. GALLAGHER, J., CONCUR