[Cite as *In re A.M.*, 2025-Ohio-752.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE A.M., ET AL. | : | |
| | : | Nos. 114380 and 114381 |
| Minor Children | : | |
| | : | |
| [Appeal by An.M., Father] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 6, 2025

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD24903394 and AD24903393

*Appearances:*

Wegman Hessler Valore and Michael Gordillo, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee*.

DEENA R. CALABRESE, J.:

{¶ 1} In these consolidated cases, appellant An.M. ("father") appeals the August 19, 2024 judgments of the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court"), which granted permanent custody of his twin children, Ar.M. and Ah.M. ("the children"), to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency") pursuant to R.C.

2151.353(A)(4), thereby terminating father's parental rights.[1] Upon review, we affirm the juvenile court's judgment.

{¶ 2} Both parents were minors when the children were born in 2020. The children had been subject to CCDCFS proceedings that same year, when they were adjudicated abused and placed in temporary custody after sustaining injuries that neither parent could reasonably explain. They were later returned to mother under an order of protective supervision, owing particularly to Ar.M.'s special needs, which necessitate 24/7 assistance. Ar.M. suffers from cerebral palsy, is blind, has mobility issues, and is fed through a "G-Tube."

{¶ 3} Testimony indicated that after the first removal, father saw the children once a week during supervised visitation and subsequently lived with them and mother for a brief time. Social worker Lauren Hopkins testified that father's involvement with the children later tapered off even further. Moreover, Hopkins stated that while she was assigned to the case between June 2022 and April 2024, she was unaware of father providing financial support for the children and that while he had been referred to resources for securing housing, he failed to establish stable, appropriate housing. In addition, father failed to submit to paternity testing.[2]

---

[1] As noted below, mother's appeal of the juvenile court's decision is the subject of companion case *In re Ar.M.*, 8th Dist. Cuyahoga No. 114335.

[2] Case worker Keshia Turner testified that father told her he avoided taking a paternity test "because he did not want to pay child support." He ultimately submitted to paternity testing shortly before the dispositional hearing, but the results were not available in time for the hearing. We hasten to note, however, that there does not appear to be a serious issue regarding paternity.

{¶ 4} The 2020 case was still active, with an order of protective supervision in place, in April 2024. At that time, mother had ceased communicating with Hopkins, who was unable to locate the children. Hopkins "reached out to father," who told her that the children might be at their maternal great grandmother's home. Hopkins visited the home, which she testified was in a "deplorable" state, and found the children. Great grandmother suffers from dementia. The children appeared to be under the care of mother's 14-year-old brother when Hopkins found them at great grandmother's house. Both children were described as filthy, with Ar.M. in his car seat and covered in feces. They were both transported to the hospital by EMS. Ar.M. was found to be severely malnourished. He was admitted to the pediatric intensive care unit and remained there for two weeks. Father never visited Ar.M. in the hospital, and the guardian ad litem noted at trial that father was "not interested in attending medical appointments."

{¶ 5} Hopkins testified that after the children had been located and Ar.M. taken to the hospital, she "spoke with [father] about how [Ar.M] was in the hospital and what led to that, and he said he had concerns prior, but he did not contact the Agency or the police." Mother was later arrested and jailed on charges relating to a domestic violence incident and child endangering, with the subject children identified as victims.

{¶ 6} On April 4, 2024, CCDCFS filed a complaint alleging the children were abused and neglected and requesting a dispositional order of permanent custody to

CCDCFS. The juvenile court held a hearing the same day and granted predispositional custody to CCDCFS.

{¶ 7} A family case plan was filed June 10, 2024. The explicit goal was permanent reunification. In addition to securing services for mother — coordinated while she was in jail — agency case worker Keshia Turner referred father to the Community Collaborative for parenting and domestic violence victim services. She also provided bus tickets to father to facilitate paternity testing and work transportation.

{¶ 8} On July 2, 2024, the trial court held an adjudicatory hearing. Both father and mother were present, represented by counsel. The parties entered into stipulations with respect to several allegations in the complaint, including the previous adjudication of abuse, the prior commitment to agency custody, mother's child endangerment charges relating to the April 2024 removal, mother's other pending criminal charges, that Ar.M. has special needs, and that father had both not yet established paternity and lacked appropriate housing. The children were adjudged to be neglected, and the case was continued for further hearing.

{¶ 9} A dispositional hearing was held on August 15, 2024. The juvenile court heard testimony, and exhibits were admitted. This court has thoroughly reviewed both the hearing transcript and the exhibits.

{¶ 10} The juvenile court filed journal entries on August 19, 2024, ordering that the children be placed in the permanent custody of CCDCFS and terminating

the parental rights of mother, father, and any John Doe alleged father. Mother timely appealed in a companion case, *In re Ar.M.,* 8th Dist. Cuyahoga No. 114335.

**{¶ 11}** Father timely appealed as well, filing separate notices of appeal with respect to each child. His cases were consolidated sua sponte for disposition. Father raises three assignments of error for review.

**{¶ 12}** In his first assignment of error, father claims the juvenile court's decision to terminate his parental rights and award permanent custody of the children to CCDCFS was not supported by sufficient evidence. When considering a sufficiency challenge to the juvenile court's decision in which "'the proof required must be clear and convincing,'" we "'examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof.'" *In re Z.C.,* 2023-Ohio-4703, ¶ 8, quoting *State v. Schiebel,* 55 Ohio St.3d 71, 74 (1990). *See also Ford v. Osborne,* 45 Ohio St. 1 (1887), paragraph two of the syllabus. A reviewing court should affirm the trial court when the evidence is legally sufficient to support the judgment as a matter of law. *In re Z.C.* at ¶ 13; *Bryan-Wollman v. Domonko,* 2007-Ohio-4918, ¶ 3.

**{¶ 13}** R.C. 2151.353(A)(4) provides that "[i]f a child is adjudicated an abused, neglected, or dependent child," the court may "[c]ommit the child to the permanent custody of a public children services agency" if the court (1) "determines in accordance with [R.C. 2151.414(E)] that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent";

and (2) "determines in accordance with [R.C. 2151.414(D)(1)] that the permanent commitment is in the best interest of the child."

{¶ 14} Pursuant to R.C. 2151.414(E), "[i]f the court determines, by clear and convincing evidence . . . that one or more of the [the enumerated] factors exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent[.]" The Ohio Supreme Court has stated:

> "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

*In re Z.C.* at ¶ 7, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. Moreover, "[a] juvenile court is only required to find that *one* of [the R.C. 2151.414(E)] factors is met in order to properly find that a child cannot or should not be placed with a parent." (Emphasis added.) *In re Y.F.*, 2024-Ohio-5605, ¶ 43 (8th Dist.), citing *In re Ca.T.*, 2020-Ohio-579, ¶ 27 (8th Dist.).

{¶ 15} Here, in accordance with R.C. 2151.414(E) and with respect to each child, the juvenile court found by clear and convincing evidence that "the child cannot be placed with one of the child's parents within a reasonable time and should not be placed with either parent" upon determining that there is evidence that one

or more of the statutory factors exist, including R.C. 2151.414(E)(1), (4), (14), (15), and (16).[3]

{¶ 16} Among other evidence, there was testimony indicating that after the previous removal in 2020, CCDCFS developed a case plan for the parents regarding parenting, housing, and domestic violence. Father nevertheless failed to submit to paternity testing until just before the final hearing because he did not want to pay child support and further failed to secure safe, appropriate housing. He bounced between homes of different relatives, two of whom refused to allow social worker Hopkins access to their homes for purposes of inspection. Father himself refused to allow case worker Turner access to a third relative's home where he was staying at the time of trial. In April 2024, case worker Turner referred father to parenting and other courses, but she testified that he "has not been engaged in any of the services that w[ere] offered to him." The evidence supported the juvenile court's finding, in accordance with R.C. 2151.414(E)(1), that father had failed to remedy the conditions leading to the children's placement with CCDCFS.

{¶ 17} The record evidence also supported the juvenile court's finding that as specified in the statute, father "demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent

---

[3] R.C. 2151.414(E)(16) specifies that the juvenile court may consider any other factors it deems relevant. *See, e.g., In re S.H.*, 2019-Ohio-3575, ¶ 29 (8th Dist.). The juvenile court's orders reference mother's incarceration and resulting unavailability to care for the children. This statutory factor, therefore, appears to apply only to mother.

home for the child." R.C. 2151.414(E)(4). Following the April 2024 removal, father had been scheduled for biweekly supervised visits with the children. He had attended merely two by the time of the August 15, 2024 dispositional hearing. Testimony reflected that he did not show signs of bonding with the children at the visits he did attend. Moreover, despite the fact that the children had to travel some two hours to attend the visits, father canceled the most recent visit only one minute prior to its scheduled start time. He did not visit Ar.M. during that child's multiweek hospital stay. He did not attend any medical appointments, even when given the requisite appointment information. He failed to take steps towards providing an adequate permanent home for the children by neglecting to establish safe and appropriate housing.

{¶ 18} With respect to the juvenile court's finding of father's unwillingness to provide for the children to prevent abuse or neglect, R.C. 2151.414(E)(14), the record evidence indicated father avoided paternity testing because he did not wish to pay child support. He did not support the children financially. Furthermore, though he claimed to be concerned about the welfare of the children, he did not report those concerns to law enforcement or CCDCFS. He only mentioned his concerns to social worker Hopkins after the children had been located in April 2024.

{¶ 19} In accordance with R.C. 2151.414(E)(15), the juvenile court found that father had committed abuse or caused or allowed both children to suffer neglect, and that the seriousness, nature, or likelihood of recurrence made placement with father a threat to each child's safety. The record supports these findings. For

example, father stipulated to the fact of the children's previous removal and the adjudication that they had been abused while in his and mother's care. As noted above, prior to the most recent removal, he did not report his concerns about the children to CCDCFS or law enforcement in order to prevent their neglect.

{¶ 20} Our independent review confirms that the juvenile court's determination that one or more of the R.C. 2151.414(E) factors exist is supported by the record.

{¶ 21} The juvenile court also found by clear and convincing evidence that for both children, "a grant of permanent custody is in the best interest of the child." In compliance with R.C. 2151.414(D)(1), the juvenile court considered all the relevant factors, including those listed in R.C. 2151.414(D)(1)(a) through (e), which are set forth in the court's decision, along with other factors. When analyzing the best interest of the child, "[t]here is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 2006-Ohio-5513, ¶ 56. Furthermore, "[t]he Ohio Supreme Court has held that 'R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best interest factors in R.C. 2151.414(D)(1)(a) through (e). Consideration is all the statute requires.'" *In re M.B.*, 2024-Ohio-6028, ¶ 30 (8th Dist.), quoting *In re A.M.*, 2020-Ohio-5102, ¶ 31.

{¶ 22} The juvenile court's decisions indicate it considered the required statutory factors with respect to the best interests of the children. This included their age, their relationship with father and mother, the children's needs for a legally secure permanent placement and whether such a placement could be achieved

without a grant of permanent custody, and the guardian ad litem's report. Based upon its review of the statutory factors, the juvenile court found "by clear and convincing evidence that a grant of permanent custody is in the best interests" of the children.

{¶ 23} Our independent review confirms that the juvenile court's best-interest determination is supported by the record. As discussed above, the record reflects, for example, that father did not have a relationship with the children, as evidenced by his limited visitations, his lack of engagement during visitations, and the fact that he failed to visit when Ar.M. was hospitalized. With respect to the need for a legally secure placement, father never established appropriate housing and did nothing to address Ar.M.'s significant medical needs. In addition, the guardian ad litem's report expressly recommends permanent custody as being in the best interest of both children.

{¶ 24} Upon review, we find that the juvenile court, in its written findings, engaged in a proper analysis and made the requisite statutory determinations pursuant to R.C. 2151.353(A)(4) and in accordance with R.C. 2151.414(E) and 2151.414(D)(1). After careful review of the entire record, we find the evidence was legally sufficient to support the juvenile court's decision as a matter of law. Father's first assignment of error is overruled.

{¶ 25} In his second assignment of error, father argues that the juvenile court's decision to terminate his parental right and award permanent custody of the children to CCDCFS was against the manifest weight of the evidence.

**{¶ 26}** We recently reiterated that "[a] juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence when the record contains competent, credible evidence by which it could have found that the essential statutory elements for an award of permanent custody have been established." *In re A.M.*, 2024-Ohio-1168, ¶ 15 (8th Dist.), citing *In re B.M.*, 2020-Ohio-4756, ¶ 11 (8th Dist.). When reviewing a manifest-weight challenge, we "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.*, 2023-Ohio-4703, at ¶ 14, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20; *see also In re J.F.*, 2024-Ohio-3311, ¶ 14 (8th Dist.). "We will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency unless the judgment is not supported by clear and convincing evidence." *In re S.H.*, 2019-Ohio-3575, at ¶ 25 (8th Dist.), citing *In re N.B.*, 2015-Ohio-314, ¶ 48 (8th Dist.); *see also In re M.J.*, 2013-Ohio-5440, ¶ 24 (8th Dist.).

**{¶ 27}** As discussed above, the record indicates that father expressed little interest in the children, even when Ar.M. was in an intensive care unit, did not follow up on referrals to parenting classes, and only sporadically attended scheduled supervised visitations. He canceled one such visitation at the last minute, even though the children had traveled two hours to see him. He did not provide care or support and failed to establish safe and appropriate housing. Following a thorough

review of the record, the greater weight of the evidence established that permanent custody was supported by the statutory factors, including factors for determining the best interest of each child. We cannot say that the juvenile court clearly lost its way and created such a manifest miscarriage of justice that the grant of permanent custody should be reversed. Accordingly, we do not find the juvenile court's decision to grant permanent custody of the children to CCDCFS to be against the manifest weight of the evidence. Father's second assignment of error is overruled.

{¶ 28} In his third assignment of error, father contends that the juvenile court erred by terminating his parental rights and awarding permanent custody of the children to CCDCFS where CCDCFS had failed to make reasonable efforts to reunify the family.

{¶ 29} We have recognized that CCDCFS "has a duty to make reasonable efforts to preserve or reunify a family unit, including preparing and maintaining a case plan to bring a child back home." *In re T.S.*, 2024-Ohio-827, ¶ 66 (8th Dist.), citing R.C. 2151.412. The record, however, indicates that a case plan was in fact filed June 10, 2024, after the second removal, with the "Permanency Goal" for each child specified as: "Return the child(ren) to parent/guardian or custodian (Reunification)."

{¶ 30} We further held in *In re T.S.*, that where CCDCFS "has filed a complaint for permanent custody under R.C. 2151.353(A)(4), a reasonable efforts determination is not required at the permanent custody hearing when the record demonstrates a reasonable-efforts determination was already made during the

proceedings." *Id.*, citing *In re A.F.*, 2023-Ohio-4423, ¶ 23 (8th Dist.). *See also In re N.R.*, 2021-Ohio-1589, ¶ 38 (8th Dist.); *In re A.R.*, 2020-Ohio-5005, ¶ 32 (8th Dist.).

**{¶ 31}** The record reflects that the juvenile court made multiple reasonable-efforts determinations prior to the dispositional hearing. On April 4, 2024, upon the second removal of the children, the juvenile court journalized separate entries specifying the agency was making "reasonable efforts to prevent the removal of the [children] from the home, to eliminate the continued removal of the [children] from the home, or to make it possible for the [children] to return home," and further specifying why those efforts had been unsuccessful.

**{¶ 32}** Similar entries were docketed May 6, 2024, June 27, 2024, and July 3, 2024. In its May 6, 2024 entries, the trial court noted "reasonable efforts" toward the goal of reunification, but remarked that while "[c]ase plan services and services [sic] have been in place during the pendency of the original case," the children's "[f]ather has not completed case plan objectives for reunification." The juvenile court's June 27, 2024 entries note "reasonable efforts," but state that the parents need, among other things, "housing [and] parenting education." The juvenile court's July 3, 2024 entries find that reasonable efforts were made to prevent removal and that services were unsuccessful because, for example, the parents "are in need of housing, parenting education and paternity establishment."

**{¶ 33}** Finally, while pursuant to *In re T.S.*, 2024-Ohio-827, at ¶ 66 (8th Dist.), the juvenile court was not required to make specific reasonable-efforts findings in its entries following the dispositional hearing, it nevertheless wrote in

those entries that despite "reasonable case planning and diligent efforts by the agency to remedy the problems" that resulted in removal, the parents "have failed continuously and repeatedly to substantially remedy the conditions."

**{¶ 34}** As discussed above, during the pendency of this matter, the juvenile court journalized several entries indicating that CCDCFS was making reasonable efforts towards the goal of reunification and further documenting why those efforts had been unfruitful. We find that father's arguments with respect to CCDCFS's efforts at reunification lack merit. The third assignment of error is overruled.

**{¶ 35}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

MICHELLE J. SHEEHAN, P.J., and
LISA B. FORBES, J., CONCUR