[Cite as *In re A.M.*, 2024-Ohio-1168.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

| | | |
|---|---|---|
| IN RE A.M. | : | |
| | | No. 113284 |
| A Minor Child | : | |
| | | |
| [Appeal by J.W., Father] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 28, 2024

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD19914813

***Appearances:***

Rosel C. Hurley III, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Zachary J. Lafleur, Assistant Prosecuting
Attorney, *for appellee.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Appellant J.W., the father of A.M., a minor child, appeals the juvenile court's grant of permanent custody of A.M. to the Cuyahoga County Division of Children and Family Services (hereinafter "CCDCFS" or the "Agency"). Because the juvenile court's judgment to award permanent custody was based on competent,

credible evidence in the record and the juvenile court's judgment was not against the manifest weight of the evidence, the judgment is affirmed.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

### A. Procedural History

{¶ 2} On December 11, 2019, the Cuyahoga County Division of Children and Family Services (the "Agency") filed a complaint in the juvenile court alleging that A.M., a minor child, was neglected and requested temporary custody of the child to the Agency. On September 9, 2020, A.M. was adjudicated to be neglected and was placed in the temporary custody of the Agency. A.M. was placed with his paternal aunt, A.B.

{¶ 3} On September 21, 2021, J.W. (hereinafter "Father"), filed a motion asking that custody of A.M. be given to his fiancée, Jewel Banks. On December 9, 2021, the Agency filed a motion to modify temporary custody to permanent custody. A hearing on the motion for permanent custody was held over two days on May 31, 2023, and August 31, 2023. On August 31, 2023, Mother stipulated to the Agency's motion for permanent custody. On September 29, 2023, the juvenile court granted the Agency's motion for permanent custody to the Agency.

### B. Motion for Permanent Custody and Evidence Presented at Hearing

{¶ 4} Within its motion for permanent custody, the Agency alleged A.M. had been in the temporary custody of the Agency from September 9, 2020, through December 9, 2021, that one or more of the factors to determine permanent custody

in R.C. 2151.414(E) applied to A.M.'s parents, and that the award of permanent custody would be in A.M.'s best interests. The motion was supported by an affidavit from Selina Agee, a child protection specialist with the Agency. Agee averred that A.M. was then three years old, that the mother was unable to sustain sobriety, and that mother's younger child was in temporary custody of that child's father due to mother's substance abuse. The social worker further stated Father was in prison and unable to care for A.M.

{¶ 5} Agee testified at the hearing that Father was incarcerated until December 2024. She testified that prior to his incarceration, Father sporadically visited A.M. As to A.M.'s placement, she said A.M. has been with A.B. since before the Agency became involved. She stated that A.B. had been providing care for A.M. for the majority of his life and he was bonded to his aunt and her family. Agee further stated A.B. was "very loving toward [A.M.]. She redirects him when he needs to be redirected. She's very involved, very interactive with him."

{¶ 6} As to other possible placements, the Agency investigated Father's fiancée because of Father's interest in having A.M. placed with her. Agee stated that A.M. and Banks were forming a relationship in October 2021 and that Banks had weekly visitation with A.M. beginning in January 2022. As to why A.M. remained with his aunt, Agee testified that A.M. had been in his aunt's care for years and that if Banks "were to get legal custody, [A.M.] would have to be moved out of the home and that to disrupt him from where he's been for most of his life would be traumatic

and we felt not beneficial to his wellbeing." She further noted that a move to Banks's custody would add "unnecessary trauma to what [A.M.] is familiar with."

{¶ 7} A.B. testified that she ensured that A.M.'s medical, educational, and basic needs had been met since he was six months old. She further testified her older children, aged 19 and 11 years old, considered their cousin A.M. to be "their little brother." She expressed a willingness to ensure that A.M. continued communication with both his parents as well as extended family. As to Father's request for Banks to have custody, she stated she was confused because Father had never indicated any concerns, issues, or problems with A.M.

{¶ 8} Ariel Bourdess, an early childhood mental health therapist with the Agency, testified that she worked with A.M. and his aunt in their home on emotional regulation. She testified that as between A.M. and his aunt, she witnessed "positive interaction patterns" and that A.M.'s aunt was able to support A.M. in whatever he does need. Banks testified that she participated in visitation as much as she could and that her children liked to play with A.M. She further stated that she had an expanded family support system.

{¶ 9} A.M. had a guardian ad litem ("GAL") assigned during the proceedings who recommended that A.M. be permanently placed with the Agency. The GAL observed A.M. with both his aunt and Banks and was concerned that a change in placement would not be in A.M.'s best interests because his aunt was committed to ensuring A.M.'s continued contact with his family. The GAL noted that the aunt had taken A.M. to visit Father while he was in prison.

## C. Decision Granting Permanent Custody to the Agency

{¶ 10} In awarding permanent custody to the Agency, the juvenile court found that A.M. had been in the temporary custody of the Agency for 12 or more months of a consecutive 22-month period and that A.M.'s return to mother or Father's home would be contrary to his best interest. As to A.M.'s best interests, the juvenile court found that pursuant to R.C. 2151.414(D)(1)(a) that

> [A.M.] has been in the uninterrupted care of his current caregiver since placed by his parents at six months old, prior to CCDCFS involvement.
>
> * * *
> [A.M.] is too young to express his wishes. GAL recommends permanent custody.
>
> * * *
>
> [A.M.] has been in CCDCFS custody since December of 2019.

{¶ 11} The juvenile court further found pursuant to R.C. 2151.414(E) that "Mother and Father placed [A.M.] at 6 months [of age] with current caregiver and neither showed strong commitment to [him] when Father was in the community" and that Father was incarcerated and would not be available to care for [A.M.] for at least eighteen months after the motion for permanent custody had been filed. The juvenile court further found relevant that A.M. had been with his paternal aunt since the age of six months and that A.M.'s mother and Father had placed him there prior to Agency involvement and that A.M. had no relationship with Banks prior to Father's incarceration.

## II. LAW AND ARGUMENT

### A. Assignment of Error

{¶ 12} Father's sole assignment of error reads:

The trial court erred in awarding permanent custody to CCDCFS as [Appellee] failed to show by clear and convincing evidence that adequate grounds existed for a grant of permanent custody and therefore such decision was contrary to the manifest weight of the evidence.

{¶ 13} Father argues that the trial court erred where it severed his parental rights because there was not clear and convincing evidence to do so because he would be available to take custody of A.M. as early as June 2024, but no later than December 2024. He also argues that the trial court should have granted Banks custody of A.M. in lieu of severing his parental rights because there were no disqualifying issues regarding placement of the child with her.

### B. Relevant Law and Standards of Review

{¶ 14} R.C. 2151.414(B)(1) provides for awarding permanent custody to a children services agency if the juvenile court finds, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency and that any of the conditions listed in R.C. 2151.414(B)(1)(a)-(e) apply.

{¶ 15} In this case, Father argues that the award of permanent custody to the Agency was against the manifest weight of the evidence. A juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence when the record contains competent, credible evidence by which it could have found that the essential statutory elements for an award of permanent

custody have been established. *In re B.M.*, 8th Dist. Cuyahoga No. 109647, 2020-Ohio-4756, ¶ 11. Clear and convincing evidence is

> that measure or degree of proof which is more than a mere "preponderance of the evidence" but not to the extent of such certainty required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

*In re Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist. 1994), fn. 2, citing *Lansdowne v. Beacon Journal Publishing Co.*, 32 Ohio St.3d 176, 512 N.E.2d 979 (1987). "When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.,* Slip Opinion No. 2023-Ohio-4703, ¶ 14.

{¶ 16} R.C. 2151.414(D)(1) provides the factors the juvenile court is to consider when determining the best interests of a child. It reads:

> (a)    The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b)    The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c)    The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services

agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d)    The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e)    Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶ 17} When determining the best-interest of a child pursuant to R.C. 2151.414(D), "[t]he court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. If it is in the best interests of a child that permanent custody be granted, R.C. 2151.414(B)(1)(a)-(e) provides, in pertinent part, conditions upon which the juvenile court may grant permanent custody:

(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised

Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

* * *

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

### C. The Juvenile Court's Grant of Permanent Custody to the Agency Was Based on Credible, Competent Evidence and Was Not Against the Manifest Weight of the Evidence

{¶ 18} Pursuant to R.C. 2151.414(B), permanent custody of A.M. in this matter could be awarded to the Agency if the juvenile court found by clear and convincing evidence that the award of permanent custody was in A.M.'s best interest and that any of the conditions listed in R.C. 2151.414(B)(1)(a)-(e) were present. A.M. was in Agency custody for over 12 months within the past 24 months at the time of the filing of the permanent custody complaint. Accordingly, the trial court's finding that the condition listed in R.C. 2151.414(B)(1)(d) was met is not in dispute.

{¶ 19} In making its determination that permanent custody would be in A.M.'s best interest, the juvenile court was required pursuant to R.C. 2151.414(D) to consider A.M.'s interaction with parents, siblings, relatives; his wishes; his custodial history; the need for a legally secure permanent placement and whether that type of

placement can be achieved without a grant of permanent custody to the agency; and whether any of the factors in divisions R.C. 2151.414(E)(7) to (11) apply in relation to A.M. and his parents.

{¶ 20} As to the interaction and relationship of A.M. and his parents pursuant to R.C. 2151.414(D)(1)(a), the juvenile court found that both mother and Father had minimal involvement in A.M.'s care and had A.M. cared for by A.B. prior to the Agency being involved.  Pursuant to R.C. 2151.414(D)(1)(b), the juvenile court found that the GAL recommended placement with the Agency, noting A.M. was too young to express his wishes.  And pursuant to R.C. 2151.414(D)(1)(e), the juvenile court found that A.M. had been in Agency custody since December 2019, a period of almost four years at the time of the grant of permanent custody.  These findings are supported by the record of the case and the testimony presented at the hearing.

{¶ 21} Father argues that the juvenile court's decision is against the manifest weight of the evidence because it did not fully consider his wishes that Banks be granted custody of A.M. and because Banks was not found to be an unsuitable caregiver.  However, as to mother and Father's interaction and relationship with A.M., the juvenile court found they had allowed A.B. to care for A.M. before the Agency was involved.  The record reflects that A.M. had been in A.B.'s custody for the majority of his lifetime.  Further, A.B. provided a suitable home and was able to meet A.M.'s needs.  Pursuant to R.C. 2151.414(D)(1)(b), the juvenile court found that the GAL recommended permanent placement with the Agency.  The juvenile court considered the relevant statutory factors in granting permanent custody and its

findings were supported by competent, credible evidence. Given the length of time A.B. cared for A.M. and how he came to be in her care, we cannot say the grant of permanent custody was against the manifest weight of the evidence or that the judgment created a manifest injustice.

{¶ 22} The sole assignment of error presented is overruled.

## III. Conclusion

{¶ 23} We find that the juvenile court's judgment to award permanent custody was based on competent, credible evidence in the record. Further we find that the judgment was not against the manifest weight of the evidence . Accordingly, we affirm the judgment of the juvenile court.

{¶ 24} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

LISA B. FORBES, J., and
MARY J. BOYLE, J., CONCUR