[Cite as *In re Z.D.*, 2025-Ohio-969.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

|  |  |  |
|---|---|---|
| IN RE Z.D., ET AL. | : | |
| | : | No. 114377 |
| Minor Children | : | |
| | : | |
| [Appeal by Ni.D., Mother] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 20, 2025

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-17-907250, AD-17-907251, AD-17-907252,
AD-24-901341, AD-24-901343, and AD-24-901344

***Appearances:***

Brian A. Smith Law Firm, LLC, and Brian A. Smith, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kristin Davis and MarTae Hainesworth, Assistant Prosecuting Attorneys, *for appellee*.

DEENA R. CALABRESE, J.:

{¶ 1} Ni.D. ("Mother"), the mother of Z.D., S.D., L.S., N.D., Am.D., and Ar.D. (collectively "the Children"),[1] appeals the juvenile court's decision terminating her

---

[1] Mother has three additional children, M.D. and twins. Their cases are not part of this appeal.

parental rights and awarding permanent custody of the Children to the Cuyahoga County Division of Children and Family Services (the "Agency"), denying Mother's motion for legal custody to maternal aunt, La.D., and the finding that reasonable efforts were made to reunify her with the Children. After reviewing the facts of the case and pertinent law, we affirm the juvenile court's judgment.

## I. Procedural History

{¶ 2} This appeal involves six neglect and/or dependency cases related to the following minor children: Z.D. (AD-17-907250), S.D. (AD-17-907251), L.S. (AD-17-907252), N.D. (AD-24-901341), Am.D. (AD-24-901343), and Ar.D. (AD-24-901344). Eight of Mother's nine children have previously been in the temporary custody of the Agency.[2] On October 11, 2023, Z.D., S.D., and L.S. were removed from Mother's care and custody and placed in the Agency's temporary custody. On December 18, 2023, the Agency filed a motion to modify temporary custody to permanent custody of Z.D., S.D., and L.S. On February 9, 2024, the Agency filed a complaint in the juvenile court alleging N.D., Am.D., and Ar.D. were dependent and neglected and requested permanent custody of the children to the Agency. On August 15, 2024, and September 4, 2024, the juvenile court conducted a hearing on the Agency's requests for permanent custody.

{¶ 3} Audrey Lee ("Lee"), an extended services worker with the Agency, testified at the permanent custody hearing that Mother and the Children were first

---

[2] Ar.D. was born in 2022, after the previous Agency involvement.

involved with the Agency in 2017. At that time, there were concerns about Mother's substance abuse, mental health, and anger, as well as concerns about the Children missing school and Mother not properly securing the twins in safety belts. (Aug. 15, 2024 tr. 15, 47.) The Children were placed in the temporary custody of the Agency, and a case plan was developed to address the concerns, with the goal of reunification. (Aug. 15, 2024 tr. 16) Mother completed the case-plan objectives and was successfully reunified with the Children.

{¶ 4} Lee further testified that the Agency became involved with Mother and the Children again in 2023, with concerns similar to those present in 2017. The 2023 concerns ultimately led to the instant appeal. (Aug. 15, 2024 tr. 25.) This time, Mother completed a mental-health and substance-abuse assessment, where she admitted to daily alcohol use, daily marijuana use, and separate incidents of single uses of cocaine and ecstasy. (Aug. 15, 2024 tr. 20-22.) Mother was diagnosed with borderline personality disorder, post-traumatic stress disorder ("PTSD"), and major depressive disorder. (Aug. 15, 2024 tr. 23.) Mother admitted she abused substances to cope with her mental-health conditions. (Aug. 15, 2024 tr. 27.)

{¶ 5} The recommendations following the assessments were that Mother complete a partial hospitalization program ("PHP") to address the substance abuse, mental health counseling, and parenting classes. Mother did not complete a PHP or any other inpatient treatment, nor did she submit to random drug testing when requested. (Aug. 15, 2024 tr. 24.) In addition, Mother did not take prescribed

medication or engage in counseling to treat ongoing mental-health concerns. (Aug. 15, 2024 tr. 26.)

{¶ 6} The Agency also had concerns about Mother's ability to meet the Children's basic needs and concerns about Mother's anger. In early 2024, Mother admitted she was facing eviction and that she struggled to keep adequate food in the home. (Aug. 15, 2024 tr. 28.) Mother's visitations with the Children were suspended in March 2024 because of her verbal aggression and threats towards Agency workers. (Aug. 15, 2024 tr. 29, 32.) A referral to anger-management services was made in March 2024 after Mother threatened Lee, but Mother did not attempt to engage in that service until the day before the permanent-custody hearing. (Aug. 15, 2024 tr. 33.)

{¶ 7} Becky Blair, the guardian ad litem for the Children, provided a report and recommendation. She stated that Mother had engaged in some services; however, she did not believe Mother benefited from the services sufficiently to continue parenting the Children. (Sept. 4, 2024 tr. 273.)

{¶ 8} On September 12, 2024, the juvenile court issued journal entries that determined the allegations of the complaint had been proven by clear and convincing evidence, granted permanent custody of the Children to the Agency, and terminated the parental rights of Mother and the alleged respective fathers. The juvenile court also denied Mother's motion for legal custody of Z.D., S.D., and L.S., to their maternal aunt, La.D. The juvenile court found, as to each of the Children, that they could not or should not be placed with Mother within a reasonable amount

of time and that granting permanent custody to the Agency was in the Children's best interests. The juvenile court also made a reasonable-efforts finding, stating:

> Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the mother and father have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.
>
> The Cuyahoga County Division of Children and Family Services has made reasonable efforts to finalize the permanency plan for the child. These efforts are mental health services and drug and alcohol services for mother. Mother has engaged with her mental health provider but has not demonstrated a benefit from services.

(Journal entries, Sept. 12, 2024.)

{¶ 9} Mother's appeal stems from these orders. She presents the following assignments of error for our review:

> 1. The trial court's rulings in case numbers AD-17-907250, AD-17-907251, AD-17-907252, AD-24-901341, AD-24-901344, and AD-24-901343, granting [the Agency]'s Motion to Modify Temporary Custody to Permanent Custody, were against the manifest weight of the evidence.
>
> 2. The trial court's decision to deny [Mother]'s Motion for Legal Custody, with regard to Maternal Aunt, La.D., and in case numbers AD-17-907250, AD-17-907251, and AD-17-907252, was not supported by a preponderance of the evidence.
>
> 3. The trial court erred, by clear and convincing evidence, in holding, in case numbers AD-17-907250, AD-17-907251, AD-17-907252, AD-24-901341, AD-24-901344, and AD-24-901343, that [the Agency] used "reasonable efforts and diligent case planning by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home," with respect to [Mother.]

## II. Law and Analysis

## A. First Assignment of Error

{¶ 10} In her first assignment of error, Mother argues that the juvenile court's granting of permanent custody of the Children to the Agency was against the manifest weight of the evidence.

{¶ 11} Under R.C. 2151.414(B)(1), a juvenile court may grant permanent custody of a child to the agency that moved for permanent custody if the court determines, "by clear and convincing evidence, that it is in the best interest of the child" to do so and that one of five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies. *In re Z.C.*, 2023-Ohio-4703, ¶ 7. Clear and convincing evidence is

> that measure or degree of proof which is more than a mere "preponderance of the evidence" but not to the extent of such certainty required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

*In re A.M.*, 2024-Ohio-1168, ¶ 15 (8th Dist.), quoting *In re Awkal*, 95 Ohio App.3d 309, 315 (8th Dist. 1994), citing *Lansdowne v. Beacon Journal Pub. Co.*, 32 Ohio St.3d 176 (1987).

{¶ 12} Under R.C. 2151.414(B)(1)(a), the juvenile court may grant permanent custody if there is a finding it is in the child's best interests and

> [t]he child is not abandoned or orphaned, *has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period*, or has not been in the temporary custody of one or more public children services agencies or

private child placing agencies for twelve or more months of a consecutive twenty two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, *and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.*

(Emphasis added.) *Id.*

{¶ 13} In determining if permanent custody is in the best interest of the child, the juvenile court looks to the factors laid out in R.C. 2151.414(D). These factors are:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶ 14} A juvenile court's decision to grant permanent custody is reviewed under a manifest-weight-of-the-evidence and/or sufficiency-of-the-evidence

standard. *In re H.G.*, 2024-Ohio-3408, ¶ 13 (8th Dist.), citing *In re Z.C.*, 2023-Ohio-4703, at ¶ 11. "'When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'" *Id.*, quoting *In re Z.C.* at ¶ 14.

{¶ 15} We find that the juvenile court considered the relevant statutory factors in granting permanent custody and its findings were supported by the record. Mother's mental health, substance abuse, and anger concerns, along with her failure to complete the case-plan services intended to address those concerns, support the juvenile court's findings. We cannot say the grant of permanent custody was against the manifest weight of the evidence or that the judgment created a manifest miscarriage of justice. Therefore, Mother's first assignment of error is overruled.

## B. Second Assignment of Error

{¶ 16} In her second assignment of error, Mother argues that the juvenile court erred when it did not grant legal custody of Z.D., S.D., and L.S. to their maternal aunt, La.D. On May 1, 2024, Mother filed a motion for legal custody asking the juvenile court to grant legal custody of Z.D., S.D., L.S., and M.D.[3] to maternal

---

[3] Legal custody of M.D. to La.D. was not raised on appeal and thus is not addressed in assignment of error No. 2.

aunt, La.D. The juvenile court denied the motion, finding that "it [was] not in the child[ren]'s best interest." (Journal entries, Sept. 12, 2024.)

{¶ 17} La.D. testified at the dispositional hearing held on August 15, 2024, and September 4, 2024, about her own personal involvement with the Agency. A referral to the Agency was made in 2020 after La.D. was involved in a motor-vehicle accident where one of her children was not properly restrained. (Tr. 108.) Another referral to the Agency was made in 2020 after La.D. assaulted her sister in the presence of her children. (Tr. 110.) In 2021, a referral to the Agency was made that La.D. was posting photos online with a gun and drugs. (Tr. 110.) A referral to the Agency was made in 2022 that one of La.D.'s children was missing. (Tr. 111.) In 2023, a referral was made to the Agency that one of La.D.'s minor children was the victim of sexual abuse in her home. (Tr. 111.) In 2024, another referral to the Agency was made when two of her children were found in a home that was raided in connection with concerns of sex trafficking. Her children were at the home that was raided without her permission, but previously she had allowed them to go to that house. (Tr. 100-102.) La.D. also testified that her minor son runs away from home and uses illegal substances. (Tr. 113.) She previously had two of Mother's other children, Am.D. and M.D., living in her home, but she could not manage their behaviors and returned Am.D. to the Agency. (Tr. 91.)

{¶ 18} The Children's guardian ad litem recommended that Mother's motion for legal custody to La.D. be denied. She stated that La.D. "didn't seem like she knew

and thoroughly understood what these children have been exposed to and didn't demonstrate an ability to be able to care for them" (Sept. 4, 2024 tr. 285.)

{¶ 19} Under R.C. 2151.353(A)(3), the juvenile court may grant legal custody to any person who files a motion or who is identified as a proposed legal custodian in a complaint or motion requesting legal custody of the child prior to the dispositional hearing. *In re Ry.T.*, 2023-Ohio-12, ¶ 29 (8th Dist.). "Legal custody" is defined as

> a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities.

R.C. 2151.011(B)(21).

{¶ 20} However, when ruling on a motion for permanent custody, "[R.C. 2151.414] does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor." *In re Schaefer*, 2006-Ohio-5513, ¶ 64. Rather, R.C. 2151.414 "requires a weighing of all the relevant factors" and the court to "find the best option for the child . . . ." *Schaefer* at *id.* Furthermore, if permanent custody is in the best interest of the child, legal custody necessarily is not. *In re D.E.*, 2025-Ohio-654, ¶ 15 (8th Dist.), citing *In re Y.F.*, 2024-Ohio-5605, ¶ 34 (8th Dist.).

{¶ 21} Given the concerns that were raised, the trial court did not err in finding that legal custody to La.D. was not in the children's best interest. Moreover,

we find no error in the juvenile court's denial of Mother's motion for legal custody of Z.D., S.D., and L.S. to La.D.  Accordingly, Mother's second assignment of error is overruled.

### C. Third Assignment of Error

{¶ 22} In her third assignment of error, Mother argues the trial court erred in finding the Agency made reasonable efforts to reunify her with the Children. Mother asserts the Agency did not assist with services, visits, or obtaining adequate food or housing.

{¶ 23} Under R.C. 2151.419, a juvenile court is required to "'determine whether the public children services agency that filed the complaint in the case has made reasonable efforts to make it possible for the child to return safely home.'" *In re T.C.*, 2024-Ohio-6131, ¶ 46 (8th Dist.), quoting *In re C.N.*, 2003-Ohio-2048, ¶ 37 (8th Dist.).  The Ohio Supreme Court has addressed whether a juvenile court must make a reasonable-efforts finding when deciding a motion for permanent custody, finding the following:

> [W]e hold that R.C. 2151.419(A)(1) does not apply in a hearing on a motion for permanent custody filed pursuant to R.C. 2151.413. However, except for some narrowly defined statutory exceptions, the state must still make reasonable efforts to reunify the family during the child-custody proceedings prior to the termination of parental rights. If the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time.

*In re C.F.*, 2007-Ohio-1104, ¶ 43.

{¶ 24} The juvenile court made reasonable-efforts findings in each case following the emergency-custody hearing. The relevant portion as to N.D., Am.D., and Ar.D. was as follows:

> The Court finds that reasonable efforts were made to prevent the removal of the child from the home, to eliminate the continued removal of the child from home, or to make it possible for the child to return home. The relevant services provided by the Agency to the family of the child and reasons why those services did not prevent the removal of the child from the home or enable the child to return home are as follows: The mother was referred for mental health assessment, parenting education, substance abuse assessment and paternity establishment. The Mother has been recommended for a partial hospitalization program. The mother will be receiving services through New Vision and the Court Diagnostic Clinic.

(Journal entries, Feb. 12, 2024.) The relevant portion as to Z.D., S.D., and L.S. was as follows:

> The Court finds that reasonable efforts were made to prevent the removal of the child from the home, to eliminate the continued removal of the child from home, or to make it possible for the child to return home. The relevant services provided by the Agency to the family of the child and reasons why those services did not prevent the removal of the child from the home or enable the child to return home are as follows: The mother has been referred for mental health and substance abuse services and services through Brighter Tomorrow. The mother has tested positive for marijuana.

(Journal entries, Oct. 11, 2023.)

{¶ 25} Because the juvenile court previously made reasonable-efforts findings, it was not required to do so at the permanent-custody hearing.

Nevertheless, in its entry granting permanent custody to the agency, the juvenile court again made a finding regarding reasonable efforts as to each case.

{¶ 26} A review of the record supports the trial court's finding that the Agency made reasonable efforts to reunify the family. The Agency implemented a case plan that focused on the specific needs of Mother and the Children and provided visitation. However, Mother did not comply with the case plan by failing to engage in services, or did not demonstrate a benefit from services. In addition, Mother's own actions during visitations led to the termination of those visitations.

{¶ 27} We find that the juvenile court's reasonable-efforts findings are supported by the record and overrule Mother's third assignment of error.

### III. Conclusion

{¶ 28} We find no error with the juvenile court's judgment to award permanent custody of the Children to the Agency, the denial of Mother's motion for custody to maternal aunt, La.D., and the finding of reasonable efforts. Accordingly, we affirm the judgment of the juvenile court.

{¶ 29} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

SEAN C. GALLAGHER, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR